UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER BLAKE
PAULOS,

        Plaintiff,                      CIVIL ACTION NO. 12-13390

    v.                             DISTRICT JUDGE BERNARD A. FRIEDMAN

                                    MAGISTRATE JUDGE MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 10, 12)**

Plaintiff Christopher Blake Paulos challenges the Commissioner of Social Security's ("Defendant") final denial of his benefits application. Cross motions for summary judgment are pending (Dkt. Nos. 10, 12). District Judge Bernard A. Friedman referred the motions to this Magistrate Judge for a Report and Recommendation (Dkt. No. 3).

**I.    RECOMMENDATION**

Because the Administrative Law Judge ("ALJ") afforded proper weight to the treating physician's opinion, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

**II.    DISCUSSION**

*A.  Framework for Disability Determinations*

Under the Social Security Act (the "Act"), Disability Insurance Benefits and Supplemental Security Income are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the

analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of HHS*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B.  *Standard of Review*

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited such that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses") (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion"); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal quotation marks omitted). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant").

## III.  REPORT

### A.  *Administrative Proceedings*

Plaintiff applied for disability insurance benefits on October 12, 2009, alleging he became disabled on July 1, 2006 (Tr. 17). After the Commissioner initially denied Plaintiff's application, he appeared with counsel for a hearing before ALJ Michael F. Wilenkin, who considered the case *de novo* (Tr. 17). In a written decision, the ALJ found Plaintiff was not disabled (Tr. 17). Plaintiff requested an Appeals Council review (Tr. 1). On May 16, 2011, the ALJ's decision became the final decision of the Commissioner when the Appeals Council declined further review (Tr. 1-3).

*B. ALJ Findings*

Plaintiff was 36 years old on his disability onset date in July of 2006 (Tr. 25). He completed some college and has past relevant work as a stock clerk, retail assistant manager, daycare worker, and janitor (Tr. 25). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that he had not engaged in substantial gainful activity since his disability onset date in July of 2006 (Tr. 19).

At step two, the ALJ found that Plaintiff had the following "severe" impairments: status post C5 vertebral fracture and C4-C6 spinal fusion, mild broad-based disc bulge with small right paracentral herniation[1] at L5-S1 with impression on the thecal sac, carpal tunnel syndrome, attention deficit hyperactivity disorder (ADHD), and depression (Tr. 19).

At step three, the ALJ found no evidence that Plaintiff's impairments met or medically equaled one of the listings in the regulations (Tr. 19).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to:

> sit for six hours of an eight hour workday, stand or walk for two hours of an eight hour workday, . . . lift 10 pounds occasionally, [and] lesser weight frequently . . . [H]e must avoid any activities that require climbing[;] . . . prolonged or protracted walking[;] . . . twisting or torqueing of the cervical, dorsal lumbar sacral spine[; and] maneuvers to the extremes of the range of motion. . . [He] must avoid activities that require anything but occasional, random stooping or squatting[;] kneeling all together[;] bending at the waist to floor level[;] . . . using his hands for excessive and forceful gripping and grasping[;] and he should not be required to twist, torque, or extend or flex his wrists forcefully throughout the extremes of the range of motion[. H]e cannot use any vibrating instrumentality in

---

[1] A herniation is the abnormal protrusion of an organ or other body structure through a defect or natural opening in a covering, membrane, muscle, or bone. *See Dorland's Illustrated Medical Dictionary*, 862 (31st Ed. 2007).

>performing work activity, [and] he is able to engage in gross and fine manipulative functioning and even simple grasping within the weight limits described above. [Plaintiff] is able to remember instructions[;] follow through with and complete assigned tasks in a timely and appropriate fashion[; and] respond appropriately to customers, supervisors, and coworkers. The deficits suffered or the modalities used to treat the same do not warrant that [Plaintiff] lie down during the course of a typical workday, but any walking performed requires the use of a cane, and [Plaintiff] requires a sit/stand option.

(Tr. 21-22).

At step four, the ALJ found that Plaintiff could not perform his past relevant work as a stock clerk, retail assistant manager, daycare worker, or janitor (Tr. 25).

At step five, the ALJ found Plaintiff was not disabled, because he could perform a significant number of jobs available in the national economy (Tr. 27).

### C. Administrative Record

#### 1. Plaintiff's Hearing Testimony and Statements

Plaintiff suffered a fall in 1993, which resulted in brain and spinal injuries (Tr. 35-36). Plaintiff lists his disability onset date as July of 2006, which – although many years after his initial head and spine injury – marks the date he stopped working full-time (Tr. 40). Plaintiff testified that he stopped working because he was unable to comply with his job's lifting requirements (Tr. 36).

Plaintiff reported very limited ability to extend and rotate his head (Tr. 40). He described extreme, chronic pain in his neck; at the base of his skull; down his mid back, through his last vertebrae, and into his hips; in his shoulder blades; occasionally down both sides of his arms; and in his leg joints, ankles, under the arch of his feet, and near the front of his feet (Tr. 40-46). Plaintiff noted only two spots – a couple of vertebrae in his back – where he has no back pain

(Tr. 44-45). Plaintiff described numbness in these areas; muscle cramps in his thighs; and swelling of his body when his pain gets particularly bad (Tr. 41, 44-46).

Plaintiff also testified to having carpal tunnel syndrome, ADHD and memory problems since his 1993 injury (Tr. 35-38, 41-42, 51-52).

Plaintiff testified that he lives in a house with a caretaker and two teenage children; his children do most of the housework (Tr. 35). He does not drive (Tr. 35). According to Plaintiff, he is able to tolerate sitting for about ten to fifteen minutes at a time, and can feed himself; he has difficulty bending over, grabbing and doing buttons, and getting his pants up with a belt (Tr. 42,54). He cannot stoop, squat, kneel, or crouch without extreme pain (Tr. 57). Plaintiff uses a cane (Tr. 44, 57-58). He stated that he can lift five to ten pounds; walk for ten to fifteen minutes at a time; and stand for fifteen minutes before he needs to lie down flat to "get all the pressure off [his] back and neck" (Tr. 57-59). Plaintiff estimates that he spends seventy-five percent of his day lying down (Tr. 59-60).

### 2. Medical Evidence[2]

As of February 2010, Plaintiff had been seeing his treating physician, Dr. Theodore G. Engelmann, D.O., approximately once a month since 2002; Dr. Engelmann regularly prescribed medications for ADHD, chronic pain, sleep difficulty, and depression (Tr. 160, 162).[3] When

---

[2] In addition to the medical evidence discussed below, Plaintiff saw both Terrence Campbell, PhD., Licensed Psychologist and Dr. Scott Lazzara M.D. for consultative examinations in September of 2007. In his decision, the ALJ explicitly disregarded each of these 2007 consultative examinations "[b]ecause of their remote nature" (Tr. 24). Because Plaintiff does not dispute this finding, the details of those examinations are not discussed.

[3] For example, the record shows that Plaintiff saw Dr. Engelmann over forty times between July of 2006 and February of 2010, primarily for medication refills (Tr. 246-286).

Plaintiff saw Dr. Engelmann on April 8, 2009, complaining of chronic pain and difficulty moving, Dr. Engelmann took an MRI of Plaintiff's cervical spine and found contour irregularity of the spinal canal at C4 through C6 (Tr. 228-30). Dr. Engelmann also found mild impression of the posterior arch of C6 onto the spinal cord without spinal cord signal abnormality and multilevel disc osteophyte complex/bulges (Tr. 227). That same day, Dr. Engelmann also took an MRI of Plaintiff's lumbar spine – which found mild broad-based disc bulge with small right paracentral herniation at L5-S1 with impression on the thecal sac – and brain, which was negative (Tr. 228).

On January 26, 2010, Plaintiff saw Michael Matouk, M.A. L.L.P, and Terrence Campbell, PhD., Licensed Psychologist, for a mental status evaluation. (Tr. 306). The evaluation notes reflect that Plaintiff: alternates between resting on the couch when helping his children with their homework; has pain and stiffness in his muscles and limbs; and walks with a normal gait (Tr. 308).

On February 1, 2010, Plaintiff saw Dr. Lazarra for a physical examination (Tr. 312). The evaluation notes reflect that Plaintiff reported that he: occasionally uses a cane if he is stiff in the morning; requires help with bathing, putting on socks and shoes, getting on and off of the toilet, and getting in and out of the bathtub; and alternates between sitting and standing every 20 minutes (Tr. 312). Plaintiff could walk for about two blocks, and lift up to 10 pounds (Tr. 312). Dr. Lazarra found: no evidence of joint laxity, crepitance, or effusion; unimpaired grip strength and dexterity; and some diminished range of motion, but no atrophy (Tr. 313-16). Dr. Lazarra noted that Plaintiff had: no trouble getting on and off of the examination table; mild difficulty heel and toe walking; and mild difficulty partially squatting (Tr. 313). Dr. Lazarra also performed a Romberg test (a balancing test), which was negative; he also found that Plaintiff

could sit, walked with a normal gait and did *not* require an assistive device (Tr. 316-17). Dr. Lazarra concluded that Plaintiff's long-term prognosis is poor due to lack of remediability (Tr. 316).

On October 26, 2010, Plaintiff saw Dr. Engelmann for a physical capacity evaluation. (Tr. 345-47). Dr. Engelmann opined that, on a sustained basis, in an 8 hour workday, Plaintiff: can sit for an hour, stand and/or walk for less than one hour, and occasionally lift up to ten pounds, but never more; cannot use either hand for repetitive simple grasping or pushing and pulling of arm controls, but can use his right hand for fine manipulation; and, cannot use his feet for repetitive movements on a sustained basis (Tr. 345-46). Dr. Engelmann opined that Plaintiff would require complete freedom to rest frequently without restriction (Tr. 346). Dr. Engelmann also found that Plaintiff had impaired ambulation with severe abnormal gait, requiring the use of a cane; multiple joint pain; and bilateral wrist pain, requiring the use of wrist splints (Tr. 349).

### 3. Vocational Expert

A vocational expert ("VE") categorized Plaintiff's prior work experience as: stock clerk, unskilled, medium; retail assistant manager, semi-skilled, light; daycare worker, unskilled, light; and, janitorial position, unskilled, light (Tr. 60-62). The ALJ then asked the VE to assume a hypothetical individual of Plaintiff's age, education and work experience, and with the limitations described by Plaintiff; the VE testified that Plaintiff could not perform any of his previous full-time work (Tr. 62).

The ALJ next asked the VE to assume a hypothetical individual of Plaintiff's age, education and past work experience who retains the RFC to, in an eight-hour workday: sit six hours; stand or walk two hours; occasionally lift up to ten pounds; and lift less than ten pounds

somewhat more frequently (Tr. 63). The individual has marked limitation in range of motion of the cervical spine and has ongoing complaints of pain and discomfort in the cervical spine and low back; but, these deficits do not interfere with or otherwise preclude functioning in the manner suggested (Tr. 63). The individual must avoid climbing; prolonged or protracted walking; any activities requiring a twisting or torqueing of the cervical or dorsolumbosacral spine; and must avoid those maneuvers to the extremes of major motion (Tr. 64).The individual must avoid activities requiring anything but occasional, random stooping or squatting; should avoid bending at the waist to floor level altogether; and should avoid using hands for excessive and forceful gripping and grasping (Tr. 64). The individual should not twist, torque, extend, or flex his wrists forcefully throughout the extremes of range of motion, or use any type of vibrating instrumentality in the performance of work activities (Tr. 64). The individual is able to engage in gross and fine manipulative function, and simple grasping within the weight limits described (Tr. 64). Any work performed requires the use of a cane (Tr. 65).

The ALJ then added that the individual shows some evidence of an unspecified mood or depressive disorder, and no evidence of any significant mental, psychological or emotional deficit that would impede work performance (Tr. 64-65). The individual is able to understand and remember instructions; follow through with and complete assigned tasks in a timely and appropriate fashion; and respond appropriately to customary work professions, supervisory personnel, and co-workers (Tr. 65). Finally, the individual's deficits or the modalities employed to treat them do not warrant the need to lie down during the course of a typical workday (Tr. 65).

In response, the VE testified that the individual could not perform any of his past relevant work, but could perform work as: an information clerk; a video surveillance monitor; a visual inspector; and an I.D. clerk (Tr. 65).

The ALJ next asked the VE to assume that: (1) the individual be allowed to change position between sitting and standing, pretty much at his option; and (2) the individual should not be required to perform work activities where the work's pace is dictated by an external source over which he has no control – such as an assembly line or a conveyor belt (Tr. 66). The VE testified that these limitations would have no impact on his response (Tr. 66).

Plaintiff's counsel then asked the VE to assume that: (1) the individual needed to take independent breaks other than 15-minute breaks at morning and afternoon; and (2) the individual needed to lie down three to four times per day (Tr. 66-67). The VE testified that such an individual would be precluded from work (Tr 66-67).

### D. Plaintiff's Claims of Error

Plaintiff argues that the ALJ failed to: (1) give controlling weight to his treating physician's opinion, and (2) provide sufficient reasons for the weight he did assign to the opinion. Both arguments should be rejected.[4]

The Sixth Circuit recently explained the weight an ALJ must afford medical sources:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency,

---

[4] Plaintiff also suggests error in the hypothetical posed to the VE, concluding that the ALJ proceeded "without proper vocational testimony," and arguing that if his non-exertional limitations – his need to lie down to provide relief from his lower back, and his lower extremity and wrist pain – were properly evaluated by the ALJ, Plaintiff would have been deemed disabled (Dkt. No. 10 at 10, 16). But, Plaintiff develops this argument no further, and, as a result, this Magistrate Judge need not address it. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to ... put flesh on its bones.").

nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence.

The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013), reh'g denied (May 2, 2013) (internal citations omitted). Here, the ALJ gave "limited weight" to Dr. Engelmann's opinion with respect to Plaintiff's current abilities:

In this instance, Dr. Engelmann's opinion is not entitled to controlling weight because it is not consistent with the other substantial evidence in the record. While Dr. Engelmann has seen [Plaintiff] on a regular basis for a number of years, the records indicate that most of these visits were simply for medication refills [ ]. Further, Dr. Engelmann's treatment is only afforded limited weight because it is not supported by the examinations of the consultative examiners, or MRI testing that had mild to moderate findings. His opinion that the [Plaintiff]'s condition is expected to deteriorate further is consistent and given significant weight, but his opinion regarding the claimant's current abilities is not supported by the records.

(Tr. 24).

Plaintiff first argues that Dr. Engelmann's opinion was not inconsistent with other substantial evidence in the record.[5] But, the ALJ reasonably reached the opposite conclusion: Dr. Engelmann's opinion *was* inconsistent with Dr. Lazzara's February 2010 findings (regarding

---

[5] Plaintiff attempts to support his argument by pointing to "the objective x-ray, MRI and other diagnostic findings cited by examining physicians of record" (Dkt. No. 10 at 10). However, Dr. Engelmann's treatment notes consist primarily of Plaintiff's subjective complaints, with minimal reference to the results of any objective medical tests (Tr. 246-86). And, while Dr. Engelmann's handwritten notes are at times difficult to decipher, Plaintiff points to no particular example of objective medical evidence that would otherwise contradict the ALJ's finding of inconsistency (Dkt. No. 10 at 10).

-12-

Plaintiff's ability to sit, ambulate, use an assistive device and grasp objects), and diagnostic imaging studies, which showed only mild abnormalities (Tr. 24). Thus, the ALJ was not required to give Dr. Engelmann's opinion controlling weight.

>However, this does not end the analysis:
>
>when "the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors – namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544. Additionally, "a decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996)).

*Beardsley v. Comm'r of Soc. Sec.*, No. 12-cv-11167, 2013 WL 1118009 at *3 (E.D. Mich. March 18, 2013); *See* 20 C.F.R. § 404.1527(c)(2).

Plaintiff next argues that the ALJ failed to indicate any reasons for the weight he afforded to Dr. Engelmann's opinion (Dkt. No 10 at 9).[6] However, this Magistrate Judge finds that the ALJ complied with the regulations because he *did* provide reasons – good reasons in accordance with the factors listed – for the weight he assigned to Dr. Engelmann's opinion. The ALJ

---

[6] Plaintiff's argument primarily cites to a January 17, 2011 letter signed by Dr. Engelmann and addressed "To Whom It May Concern," in which Dr. Engelmann provided typed translations of portions of the October 2010 Physical Capacities Evaluation (Tr. 349). He translated his handwritten comments that Plaintiff "suffers from severe neck trauma and multiple tramatic [sic] injuries in a fall in 1993. [Plaintiff] is in constant pain and uses wrist splints and cane for ambulation"; and that the "[p]hysical exam demonstrate[d] impaired ambulation with severe abnormal gait[,] multiple joint pain[,] and bilateral wrist pain w/ [sic] wrist splints" (Tr. 349). Dr. Engelmann then provided a translation of the final remarks portion of the evaluation: "[Plaintiff's] present limitations are, in my medical opinion permanent and I do not anticipate any improvement. I feel that in the future [Plaintiff's] symptoms will worsen and he may require the use of a wheelchair in the next few years" (Tr. 349).

expressly considered the length of Plaintiff's treatment relationship with Dr. Engelmann, and the frequency of Plaintiff's visits to Dr. Engelmann, noting that Plaintiff had seen Dr. Engelmann regularly for years (Tr. 24). The ALJ then reasonably considered these factors alongside evidence which demonstrated a treatment relationship that appeared to exist "simply for medication refills" (Tr. 24). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories."). The ALJ also discussed the consistency and supportability of Dr. Engelmann's opinion, emphasizing that Dr. Engelmann's opinion conflicted with the examination findings of two consultative physicians and diagnostic imaging studies (Tr. 24).[7] *See* 20 C.F.R § 404.1527(c)(3)-(4) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *see also Kidd v. Comm'r of Soc. Sec.*, 283 F. App'x 336, 340 (6th Cir. 2008). In sum, the ALJ's reasoning is sufficient to satisfy the regulations' procedural requirement and should be affirmed.

---

[7] The ALJ did not explicitly discuss Dr. Engelmann's specialization in this segment of his opinion, and in this case, it is not relevant to the inquiry. The records indicate that Dr. Engelmann is a D.O. with a "comprehensive family healthcare" practice (Tr. 349). *See* 20 C.F.R. § 404.1527(c)(2).

## IV. CONCLUSION

Because substantial evidence supports the Administrative Law Judge's ("ALJ") decision, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and the case be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                               s/Mark A. Randon

                                               Mark A. Randon

                                               United States Magistrate Judge

Dated: June 4, 2013

### *Certificate of Service*

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, June 4, 2013, by electronic and/or ordinary mail.*

*s/Eddrey Butts*

*Case Manager for Magistrate Judge Mark A. Randon*